WESTERN DIST.
*October,* 1834.

CHEW ET AL.
*vs.*
FLINT.

Officers of the army of the United States stationed on duty in this state, do not cease to be citizens of the state in which they resided and exercised the rights of citizenship when called into service.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

## CHEW ET AL. *vs.* FLINT, CURATOR, &c.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF RAPIDES.

The person making opposition to an application for a curatorship of a vacant succession, must state in writing, the reasons why he claims the curatorship, in preference of him demanding it, and that he has a better right than the party claiming to be appointed; otherwise his opposition will be rejected, with costs.

A special agent or attorney in fact, of one or more creditors, cannot claim the curatorship of a vacant succession, over other creditors or strangers.

A transferee of claims against a succession, for collection, is but a mandatory, and if the transfer is simulated, that is, a mandate in disguise for the purpose of obtaining a curatorship, it cannot operate to the prejudice of *bonâ fide* creditors.

The law requires applications for curatorships of vacant successions, to be published in the gazette, as well as a notice at the door of the court house, and it is made the duty of the judge, to make these publications.

WESTERN DIST.
October, 1834.

CHEW ET AL.
vs.
FLINT.

Publication of applications for curatorships, is to operate as a constructive notice, to all persons having a right to make opposition, and as in all cases of constructive notice, it must be strictly proved.

An entry on the minutes of the Probate Court, stating the fact, that a publication of an application for a curatorship was made, is not evidence of the fact, as relates to persons to be affected by such notice.

The party, claiming the benefit of a publication of an application for a curatorship, is bound to show it was duly made.

This case is founded on two oppositions to the application of the defendant, to be appointed curator of the vacant successions of Jonas Meriam and J. W. Broaddus, merchants, lately trading under the firm of Meriam & Broaddus, in the town of Alexandria, and now deceased.

On the 4th of February, 1833, M. P. Flint, attorney at law, applied to the judge of probates, for the parish of Rapides, for the curatorship of the successions of Meriam & Broaddus, alleging that said firm, and each of its partners, was indebted to him in the sum of forty-one thousand seven hundred and fifty-nine dollars, with interest. He prays that he may be appointed curator to said successions.

On the same day, the probate judge made the following order : " Let this application be advertised, according to law ; which petition was duly advertised, on the day of the filing thereof."

On the 13th February, Robert Chew, a resident of the parish of Rapides, and cashier of the branch of the Canal Bank, &c., in Alexandria, filed his opposition to the application of Flint, which he alleges, is based on claims against said successions, that are illegal and unjust, and which ought not to entitle him to the curatorship thereof ; and he further alleges, he is the agent and representative of sundry creditors, to a very large amount, residing in New-Orleans and New-York, and of the Canal Bank, for two thousand dollars ; wherefore he prays that Flint's application be rejected, and that he be appointed to the curatorship of said successions.

On the 13th March, 1833, following the above, Ezekiel Hayes filed his opposition to the application of Flint, on the ground that he was not a *bonâ fide* creditor of said successions; that he was not the owner of the debts he set up against them, but that said claims were transferred by persons having no rights, and which transfer to Flint was simulated, and without consideration, made to enable him to procure the curatorship of said successions. He alleges, he has the best right to the curatorship, his claim amounting to thirty-two thousand dollars. He prays, that he may be appointed, together with Robert Chew, the first applicant, and who represented his claim in that application.

Hayes further prays, that the application of Flint be rejected, and that he answer on oath, the following interrogatories:

1. Are you the *bonâ fide* owner of the claims against Meriam & Broaddus, on which your application is based?

2. Did you pay any consideration for them? if yea, how much?

3. From whom did you obtain the claims against Meriam & Broaddus, on which you base your application?

4. Were they not all obtained from Ivers Jewett? if not all, how many of them?

5. Did you obtain said claims by purchase, before the filing of your application? if not then, when?

6. Did you pay cash for them? or what did you give, and how much?

7. If you have not yet paid, what are you to give?

8. Do you not know, that Ivers Jewett was a partner of Jonas Meriam, or of Meriam & Rand, or of the late firm of Meriam & Broaddus?

9. Do you not know, that he has failed, and made an assignment of his property?

Hayes's opposition was overruled, as coming too late; to which order of the probate judge overruling the same, Hayes's counsel excepted.

*Chew*, in his opposition, propounded the same and foregoing interrogatories of Hayes, to which *Flint* answered on oath, as follows:

1. He says he is the holder and owner of a claim, for the amount stated in his petition, against the succession of Meriam & Broaddus, for forty-one thousand seven hundred and fifty-nine dollars.

2. He says, that he gave his obligation, for the amount essentially negotiable, which was guarantied by his partner, Maj. Isaac Thomas, which said obligation has been transferred by Ivers Jewett, to whom it was given, and notice of transfer given to this respondent.

3. He says, that he obtained the claim on which he has based his obligation, from Ivers Jewett.

4. He says, that Ivers Jewett transferred to him, claims for the above specified amount, on the 4th day of February last.

5. He says, that he has already stated the manner, in which he obtained the claim, and refers to his previous statement for answer.

6. He says he did not pay cash for said claims.

7. He states that he paid on the obligation, that which he has already mentioned?

8. He states that he has already sufficiently answered this interrogatory, in his other answers.

9. He answers, that he does not know that Ivers Jewett has failed, but has heard that he had suffered much by the house of Meriam & Broaddus, and that he does not believe he has made any surrender of his property, in Massachusetts.

The counsel of Chew excepted to these answers, and object, that in his first answer, Flint does not reply to that part of the first interrogatory, which asks him, "if he is the bonâ fide owner of the claim." To the fifth, he does not reply fully to that part, in which he is asked, "if he purchased the claim." To the eighth, because he does not answer fully that part, which asks him, "if he is to pay cash, and how much." The exception was overruled, and a bill of exceptions taken.

The claim on which Flint bases his application, is an account current of Messrs. Meriam & Broaddus, with Ivers Jewett, beginning in November, 1831, and ending February 1st, 1833, on which day a balance was struck, in favor of

Jewett, amounting to forty-one thousand seven hundred and fifty-nine dollars and twenty-six cents.

At the foot of the account current, is the following assignment :

"For value received, I hereby assign, transfer and set over to M. P. Flint, the balance due me on the above account, against the firm of Meriam & Broaddus, said balance being forty-one thousand seven hundred and fifty-nine dollars and twenty-six cents."

"February, 4th, 1833."            "Ivers Jewett."

The testimony shows, that Meriam died in New-York, about the last of October, 1832, and Broaddus on the 2d of February, 1833, at his residence in Alexandria, Louisiana.

There is no evidence in the record, that the application of Flint was ever advertised, except the statement from the minutes of the court, that the " petition was duly advertised, on the day of the filing thereof."

After hearing all the evidence concurrently, with the opposition of Robert Chew, the probate judge decreed, that Micah P. Flint be appointed the curator of the vacant successions of Jonas Meriam and J. W. Broaddus, deceased, on giving bond with security, according to law ; and that Boyce and Barry be appointed attorneys, to represent the absent heirs ; and that Chew pay the costs of his opposition, the said successions paying the balance.

Chew and Hayes filed a motion for a new trial. 1. The judgment is contrary to law and the evidence. 2. Hayes, a principal creditor, moves specially, that his application ought to have been received as in time, and that he should have been appointed. This motion was overruled. Chew and Hayes both appealed.

*Dunbar, Thomas and Flint,* in support of the appointment of the curator.

1. In contestations for curatorships of vacant estates, it must be granted to the creditors, in preference to those who are not. The judge is bound to exercise his discretion, in

WESTERN DIST. choosing between creditors, and to give a preference to the
October, 1834. larger. *La. Code,* 1119.

CHEW ET AL. *vs.* FLINT.

2. A creditor living at the place, or in the state, should be preferred to one who resides at a distant place, or out of the state. *4 Martin,* 373, 374.

3. Oppositions to appointments, can only be founded on a better right, than the person claiming the curatorship, and must be made within ten days after the application is advertised. The record declares, Flint's application was duly advertised ; and Hayes was therefore properly rejected. *La. Code,* 1111. *Code of Practice,* 970, 972.

4. The curator should be a resident of the parish, where the succession is opened. In this respect, Flint must be preferred, and his appointment maintained. *La. Code,* 444, 445, *and* 1149. See *case of Rust* vs. *Randolph, 4 Martin,* 373.

5. Chew, one of the appellants, was not a creditor, but only the attorney in fact, or agent of creditors; he had therefore no personal interest in the succession, and is not authorised to vote for, or be appointed curator, for it is only for the appointment of syndic, that an attorney in fact can vote.

6. The transfer of Jewett's claim to Flint, was after the succession was opened, but previous to the application for the curatorship and judgment thereon, which latter period is to be looked to, in pronouncing on contestations between creditors, on their respective claims. *5 Martin,* 89.

7. There is no weight in the objection of the counsel for the appellants, that Flint was the purchaser of a litigious right, and therefore not entitled to the curatorship. A right is not litigious, because it is required to be settled by law, in a court of justice. On this principle, every right or claim might be said to be litigious, because it is liable to be collected or settled by a law-suit.

*Winn, Boyce and Barry,* for the oppositions of Chew and Hayes, to the appointment of the curator, contended:

1. That in all contestations of curatorships of vacant successions, the creditors of the deceased, at the opening

of the succession, are entitled to the preference, over those who become such afterwards. *La. Code*, 1114.

2. Although Chew is not a creditor, he is the attorney in fact of creditors, to a large amount, and is authorised to represent them as fully in this case, as if they were present; in this he is *pro hac vice* a creditor, and entitled to the curatorship.

3. Heirs may accept and administer a succession, by an attorney in fact, and the same reasoning and analogy applies with greater force to creditors. *La. Code*, 1038, 1042, 2966.

4. The application of Flint to be curator, was never in fact advertised, and his appointment is therefore null and void, on this ground. The mere endorsement on the petition, and statement in the record, that it was advertised according to law, is no evidence that it was so advertised. The advertisement must be shown by legal proof. *Code of Practice*, 967–8. *La. Code*, 1109.

5. The claims of Flint were purchased by him, as litigious rights against this succession, and therefore do not entitle him to the curatorship. *La. Code*, 2523, 3622, *No.* 22.

*Bullard, J.*, delivered the opinion of the court.

The controversy in this case, grows out of sundry oppositions to the appointment of the appellee, to the curatorship of the estates of Meriam & Broaddus. Only two of these oppositions are to be considered by this court, to wit: that of R. Chew, in his own right, and as the attorney in fact of numerous creditors, in New-Orleans, and of E. Hayes, who alleges himself to be a creditor. Separate appeals were taken, and prosecuted by these two parties, and have been argued together. The opposition of Chew was overruled, and that of Hayes not received by the court below, on the ground that it was not filed within the ten days limited by law. Two questions, therefore, present themselves: 1st. Did the court err in overruling the opposition of Chew, upon the merits? and, 2d. Was the opposition of Hayes in time, and based upon such grounds, as authorised him to make opposition?

WESTERN DIST.
October, 1834.

CHEW ET AL.
vs.
FLINT.

The person making opposition to an application for a curatorship of a vacant succession, must state in writing the reasons why he claims the curatorship in preference of him demanding it, and that he has a better right than the party claiming to be appointed, otherwise his opposition will be rejected with costs.

A preliminary inquiry presents itself, to wit: who has a right to make opposition to the appointment of an applicant for the curatorship of a vacant estate. The 1112th article of the Louisiana Code, requires that the opposition should be in writing, stating the reasons why the party opposing, claims the curatorship in preference to the party demanding it. In that part of the Code of Practice, which treats of the appointment of curators of vacant successions, and to absent heirs, the legislature is still more explicit. Article 972 declares that, "this opposition can only be founded on the allegation of a better right on the part of the person opposing, than of the person claiming the tutorship (in the French text *Curatelle*), otherwise it shall be rejected with costs," &c.

The opposition of Chew, which was tried on the merits, and which we are called on to review, was founded on the twofold grounds, that he was a creditor, and that he was the special agent of sundry other creditors in New-Orleans. One of those grounds has been explicitly abandoned in the argument, and it is not now contended, that he is a creditor in his own right. We are, therefore, to regard his claim, only as the special agent of others, who are shown to be creditors.

Several powers of attorney are spread upon the record, all of similar import, signed by various creditors, authorising the appellant, R. Chew, to apply for the appointment of a curator, to the proper tribunal, and further authorising him, in their behalf, to have the said R. Chew, appointed said Curator.

The inquiry, therefore, as relates to Chew, is narrowed down to this: whether a special attorney, in fact, who is authorised to apply for the curatorship, in his own name, shows a better right than the appellant.

The Code establishes the order of preference, article 1114. 1st. The surviving partner, unless the partnership has been a commercial one. 2d. The heir present or represented in preference to the surviving husband or wife. 3d. The surviving husband or wife, in preference to the creditors of the deceased; and, 4th. The creditors in preference to those who are not. This part of the Code, does not give expressly to an attorney in fact of creditors, any preference, either over

A special agent or attorney in fact of one or more creditors, cannot claim the curatorship of a vacant succession over other creditors or strangers.

WESTERN DIST.
*October*, 1834.

CHEW ET AL.
*vs.*
FLINT.

other creditors or strangers, to the curatorship. Upon his appointment, he would necessarily cease to act as the attorney in fact of particular creditors, because he would be bound to give security, and take an oath, and would be bound to administer for the interest of all the creditors, and not specially for that of his constituents. His authority to apply in his own name for the curatorship, in their behalf, would cease on his appointment, for it is clear, they cannot authorise him to administer for their benefit. Admitting that any one of his principals had a better right than the appellee, it does not follow, that their joint procuration confers a legal right on their attorney in fact, however respectable it may be, as a recommendation to the judge of the Court of Probates.

But it is urged, that, in the administration of estates, a beneficiary heir, who is absent, may administer by a special agent, or attorney in fact, and that *ube eadam est ratio eadam est lex.* The Louisiana Code, article 1038, which is relied on by the counsel for the appellants, provides that, "if the beneficiary heirs are absent, but represented in the state, their attorneys in fact can claim, in the name of their constituents, the preference for the administration over every creditor of the succession, provided they have a special power to accept or reject this succession, or a general power to accept or reject all successions, which may fall to their principals."

This part of the Code, regulates the administration of successions accepted with the benefit of an inventory, and gives to the heir at law, the preference over all others in the administration. He administers, not for the exclusive interest of creditors, but has, in his own right, the residuary interest in the estate. The Code, therefore, even in cases of his absence, does not exclude him; but his attorney in fact is authorised to demand the administration in his name, on furnishing the necessary security. In the administration of vacant successions, a different principle is established: the eventual and residuary rights of the heirs, who are absent and unknown, are to be protected by a counsel of absent heirs, whom it is the duty of the court to appoint, and whose functions do not expire until the heirs make their appearance, or until the

curator is finally discharged. He is required to represent the absent heirs, not only in the inventory, but in all the acts required by law to be done. We do not think ourselves authorised to extend the provision of the Code relied on, to cases not expressly embraced by it, and particularly to a case, where the distinction is so obvious.

The opposition of E. Hayes, which we are next to consider, was founded on the allegation, that he is the largest creditor of the succession, that the other applicants, except Chew, are unfounded in their pretensions, that they are not *bonâ fide* creditors of said succession, and that if they present any claims, which are entitled to be considered debts, they are not the owners of them : that the same have been transferred by persons, who had no right to transfer them, and in addition to this, the transfers are simulated and without consideration, to enable the applicant M. P. Flint, to obtain the curatorship of the estate.

*A transferee of claims against a succession for collection, is but a mandatory, and if the transfer is simulated, that is a mandate in disguise for the purpose of obtaining a curatorship, it cannot operate to the prejudice of bonâ fide creditors.*

This opposition is based upon a better right, than that of the applicant, if it be true, that Hayes is a real creditor, and Flint only a fictitious one ; for we cannot doubt, (without inquiring at this time, into the question much discussed in the argument, whether the transferee of a debt be a creditor of *the deceased,* as contradistinguished from a creditor *of the estate,*) but that the law intended to confer the curatorship on a real *bonâ fide* creditor, in preference to one who is only nominally so, and who acts merely as a person interposed. If the application of Hayes, did not come too late, our opinion is, that it shows on the face of it, a case which, if the facts are taken as true, would entitle him to the preference, if he possesses, in other respects, the necessary legal qualifications. A transfer merely for the purpose of collection, is but a mandate, and if the transfer in this case be simulated, that is, a mandate in disguise, for the purpose, as it is alleged, of obtaining the curatorship, it cannot operate to the prejudice of *bonâ fide* creditors, in their own right, who have really something to gain or lose by the admission or rejection of their claims. As a mere mandatory, we have already said, he can have no legal preference, and if he be not in truth and

in fact the owner, although nominally so, he is not a creditor in relation to other creditors, in a contest for the curatorship.

But the judge below rejected or refused to receive the opposition, on the ground, that it came too late; that more than ten days had elapsed since the publication of the notice of application by Flint, after which the Code forbids any opposition to be made. The only evidence of the notice having been published and advertised, appears in the record, to be endorsed beneath the order of the judge, in these words, " which petition was duly advertised, on the day of the filing thereof." This is extracted from the minutes of the court.

The Code requires a publication in the gazette, as well as a notice at the door of the court house, and it is made the duty of the judge to make these publications. *C. P.* 968, 969.

The publication thus provided for, is to operate as a constructive notice to all persons, having a right to make opposition, and as in all cases of constructive notice, it must be strictly proved. It is true, it is the duty of the judge to give notice, but it does not, in our opinion, follow, that an entry in the minutes of the court, stating the fact, is evidence of the fact, as relates to persons to be affected by such notice, and is to conclude them. The party who claims the advantage of such notice, is bound, in our opinion, to show it. In this case, it was not shown, by sufficient legal evidence, and we think the court erred in refusing to receive the opposition.

The court cannot forbear to add, that the scramble too common in our courts, in which gentlemen of the bar are interested, in relation to the administration of estates, the struggles *per fas et per nefas,* which mark these contests; the protracted delays which attend them, regardless of the rights of honest, and it may be of suffering creditors, are calculated to defeat the ends of justice, and reflect no credit on the profession.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates, be annulled, avoided and reversed; that the case be remanded, with instructions to the

WESTERN DIST.
*October,* 1834.

CHEW ET AL.
*vs.*
FLINT.

The law requires applications for curatorships of vacant successions, to be published in the gazette, as well as a notice at the door of the court house, and it is made the duty of the judge to make these publications.

Publication of applications for curatorships is to operate as a constructive notice to all persons having a right to make opposition, and as in all cases of constructive notice, it must be strictly proved.

An entry on the minutes of the Probate Court stating the fact, that a publication of an application for a curatorship was made, is not evidence of the fact as relates to persons to be affected by such notice.

The party claiming the benefit of a publication of an application for a curatorship, is bound to show it was duly made.

WESTERN DIST. judge, not to refuse to receive, and act upon the opposition of
October, 1834. E. Hayes, unless the appellee shows the publication of the
WILLIAMS notice according to law, and that so far as it overruled the
*vs.* opposition of Chew, the judgment of the Court of Probates
KELSO. be affirmed, with costs in both courts. The costs of the
appeal, as to E. Hayes, to be paid by the appellee.